## Appeal of RUB-NO-MORE CO.    Docket No. 57.

The earned surplus of a taxpayer as shown by its books will be accepted as correct in the absence of affirmative evidence to the contrary. No evidence having been introduced in this appeal to show that inadequate depreciation had been taken in prior year, the earned surplus should not be reduced on that account.

The experience of the corporation in years prior to 1918, in the absence of affirmative evidence to the contrary, indicates that the deduction on account of repairs and wear, tear, and exhaustion of assets in that year allowed by the Commissioner is excessive.

Submitted October 6, 1924; decided December 23, 1924.

*Frank E. Seidman, C. P. A.,* for the taxpayer.

*R. A. Littleton, Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before JAMES, STERNHAGEN, TRAMMELL, and TRUSSELL.

deduction on account of the wear, tear, and exhaustion of its depreciable assets in prior years and the disallowance of a portion of the deduction claimed by the taxpayer for 1918 on account of wear, tear, and exhaustion of assets in determining net income.

No witnesses appeared. There were no depositions. The only evidence introduced consisted of the revenue agent's report and an appraisal of the physical properties of the company as of May 31, 1915, which were received by consent.

### FINDINGS OF FACT.

The taxpayer was an Indiana corporation, organized on June 30, 1903. It was engaged in the business of manufacturing soap, washing powders, and similar products. It owned and used in its business certain depreciable assets consisting of buildings, machinery, equipment, etc., and on December 31, 1917, the total cost of depreciable assets, as shown by its books, was $376,096.68. As of December 31, 1917, the taxpayer had taken and charged off the amount of $66,372.66 on account of the wear, tear, and exhaustion of said assets.

From an appraisal submitted by the taxpayer and from the report of the revenue agent the facts as to depreciable property are substantially as follows:

As of May 31, 1915, the total depreciable assets were appraised at a value of $362,223.47. The depreciated value was stated as $320,484.53, or 88.4 per cent of the value new, and the deduction for depreciation used in said appraisal in arriving at the sound value of said assets was $41,738.94.

As of December 31, 1914, the total depreciable assets, according to the revenue agent's report, amounted to $304,808.67, and the depreciation which had actually been taken on the books amounted to $34,440.59, leaving the book value of said assets $270,368.08, or 88.7 per cent of the cost thereof.

Repairs on machinery only from 1911 to 1914, inclusive, amounted to $6,709.59, or an average of $1,677.40 per year.

Depreciation deduction of $34,440.59 over the period of 11 years and 11 months made an average of $2,889.50 per year.

Repairs and depreciation together over this period averaged approximately $4,566.90 per year. For 1915 repairs (machinery only) amounted to $3,818.96 and depreciation deducted amounted to $3,454.04, or a total of $7,273. For 1916 repairs (machinery only) amounted to $1,600.91 and depreciation nothing, making a total of $1,600.91. For 1917 repairs (machinery only) amounted to $4,695.53 and depreciation amounted to $29,000.03, a total of $33,695.56 for both repairs and depreciation. For 1917 the revenue agent allowed depreciation of $22,596.24, which with the repairs stated above amounted to $27,291.77. The taxpayer deducted for repairs $4,695.53 and for depreciation $29,000.03, or a total for both depreciation and repairs of $33,695.56. For 1918 the taxpayer deducted for repairs the amount of $17,149.55 and for depreciation $28,679.42, a total of $45,828.97. For 1918 the repairs claimed by the taxpayer were allowed by the revenue agent and depreciation was allowed in the amount of $24,729.92, a total of $41,877.47.

#### DECISION.

The deficiency should be computed in accordance with the following opinion. Final decision of the Board will be settled on consent or on fourteen days' notice in accordance with Rule 50.

#### OPINION.

TRAMMELL: The taxpayer in this case relies upon the principle that the surplus appearing on its books should not be disturbed for the purpose of determining invested capital in the absence of affirmative evidence that its books are not correct. This principle has been established by the Board in the *Appeal of Cleveland Home Brewing Co.*, 1 B. T. A. 87, and followed in the *Appeal of the Russell Milling Co.*, 1 B. T. A. 194. The books of the taxpayer will be accepted as reflecting the true earned surplus unless the Board has before it affirmative evidence which would warrant it in finding as a fact that the surplus is not correctly reflected thereon. The appraisal which was submitted by the taxpayer in this case corroborates the presumption that its books were correct. While the appraisal was based upon replacement cost of the assets new and the values shown thereby can not therefore be accepted for establishing values for invested capital purposes, it is shown in the said appraisal that the value of the said assets was 88.4 per cent of the replacement cost new. The books of the taxpayer indicate that the assets actually on hand as of December 31, 1914, approximately six months before the appraisal, were of the value of 88.7 per cent of the cost price thereof. This would indicate that the depreciation actually charged off on the books of the taxpayer and the depreciation which had been actually sustained were substantially the same. The books of the taxpayer are therefore held to reflect its true earned surplus.

It is clear, however, that if the taxpayer's evidence as to the value of its property as of May 31, 1915, in its then depreciated condition is to be accepted as confirming its balance sheet values as of December 31, 1917, for the purpose of invested capital in 1918, the total deduction for repairs and depreciation in 1918, in the absence of evidence to the contrary, is excessive.

In the absence of affirmative evidence that the assets sustained a greater depreciation in 1918 than in the years prior to the appraisal as indicated thereby, we are of the opinion that the depreciation established in the appraisal should be applied to the year 1918.